FILED
United States Court of Appeals
Tenth Circuit

April 30, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

ANTHONY HOOKS,

       Petitioner-Appellant,

v.

RAYMOND ROBERTS; ATTORNEY
GENERAL OF KANSAS,

       Respondents-Appellees.

No. 09-3352
(D.C. No. 5:09-CV-0390-JWL)
(D. Kan.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **TACHA, BRISCOE,** and **O'BRIEN**, Circuit Judges.

Anthony Hooks, a Kansas state prisoner, seeks a certificate of appealability (COA)

in order to challenge the district court's denial of his petition for writ of habeas corpus

seeking relief under 28 U.S.C. § 2254. Because Hooks has failed to satisfy the standards

for the issuance of a COA, we deny his request and dismiss the matter.

I

*The state trial proceedings*

On October 19, 2005, a criminal complaint was filed in the District Court of

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.

Sedgwick County (Kansas) charging Hooks with one count of aggravated battery and one count of possession of cocaine. The case proceeded to trial on February 13, 2006. Before the conclusion of all the evidence, however, Hooks agreed to plead no contest to both charges and, in return, the prosecutor agreed to recommend that Hooks receive "the lower number for each count" and for the sentences to run concurrently with each other. State ROA, Vol. 1 at 32. The written plea agreement also stated, in pertinent part:

> I understand that the Kansas Sentencing Guidelines Act will apply at my sentencing. Under this Act, a presumptive sentence will be determined by the Court, by combining the severity level of the current crime of conviction and my prior criminal history.
>
> * * *
>
> I understand from discussions with my attorney, and have been advised by the Court, that the following are the range of sentences and fines which may be imposed against me by the Court if I choose to enter plea(s) of guilty or nolo contendere (no contest) to the criminal charges pending against me.
>
> **Count 1:     38 to 172 months in the custody of the Department of Corrections and a fine of up to $300,000.00.**
>
> **Count 2:     10 to 42 months in the custody of the Department of Corrections and a fine of up to $100,000.00.**

Id. at 33 (emphasis in original).

At the plea hearing, the state trial court specifically advised Hooks of the consequences of his plea, including the possible sentences that could be imposed on each count:

> THE COURT: Do you also understand that even though you're entering into a plea today, the Court may impose the same punishment as if you had

2

finished this trial and been found guilty on these counts?

THE DEFENDANT: Yes.

THE COURT: Do you further understand that if the Court finds you guilty of the two counts – Count 1, aggravated battery, you could be sentenced from 38 to 172 months in prison and a fine up to $300,000, and in Count 2, possession of cocaine, you could be sentenced from 10 to 42 months in prison and a fine up to $100,000, and the Court come [sic] impose those counts consecutively even though the State is recommending concurrent? Regardless of what's in the plea agreement, that's how you could be sentenced. Do you understand that?

THE DEFENDANT: Yes, sir.

Id., Vol. 2 at 8-9.

After accepting Hooks' plea, the state trial court ordered a presentence investigation report (PSR) to be prepared. The PSR, filed with the court on March 29, 2006, revealed that Hooks had an extensive prior criminal history. More specifically, the PSR listed a total of thirty-six prior criminal convictions, including theft, drug-related offenses, battery, disorderly conduct, and resisting arrest, that had been incurred by Hooks between May of 1987 and November of 2005. This criminal history, combined with the severity level of the two offenses to which Hooks pled no contest, resulted in a sentencing range of 154 to 172 months' imprisonment on the aggravated battery conviction and 10 to 12 months' imprisonment on the possession of cocaine conviction. Id., Vol. 1 at 42.

Hooks filed a notice of objection to the PSR's determination of his prior criminal history, "assert[ing] that he only ha[d] non person felony convictions for drug offenses"

3

and no "person felony conviction" or "battery convictions." Id. at 47. The notice of objection further argued that his criminal history score should have been "F," rather than "A" as determined in the PSR. Id. Hooks also filed a motion asking the state trial court "to allow a departure from the presumptive prison sentence" set forth in the PSR "and/or to allow a durational departure as the [c]ourt f[ound] appropriate." Id. at 49. In support of this motion, Hooks asserted, in pertinent part, that (1) his "plea bargain contemplated that [he] . . . probably [had] a low scoring criminal history, being history F for two prior drug convictions," (2) "he d[id] not have prior crimes of violence," and (3) even if he "ha[d] prior person felony convictions, the manner in which he [obtained] a high criminal history [wa]s due to battery charges, which [we]re aggregating." Id.

The state trial court held a sentencing hearing on April 13, 2006. At the outset, the state trial court allowed Hooks' trial counsel to address the matter of Hooks' prior criminal history:

> The State has provided me just now with certified copies of journal entries for the batteries and for the burglary. Mr. Hooks has told me that he does not remember having any battery convictions at all and the burglary he understood was reduced to a misdemeanor. And I'm looking at a journal entry here which has it as a burglary of a residence felony conviction. Since he has told me certainly that the batteries do not exist or are not him and the State has shown it with journal entries, it seems to me normally that would be sufficient, but he is still telling me he does not have these priors. And so what I think I need to do is at least have a mug shot pulled to see if it is the same person. I would note for the record the city cases do have the same social security number, I believe, and same date of birth with regard to the last four digits of the social and year of birth as the Complaint/ Information does. So it would have the appearance of being the same person. However, I have known of cases personally where somebody has given somebody else's name and date of birth when they went in front of a

4

city judge and it could have happened here. The arrests would, I think, have a booking number and a mug photo to go along with it, so I'm going to have to ask the Court's leniency in checking that out as well as with the – he's looking at the burglary of a residence, that's something I'll have to note if he wants to still contest that or not because I have the journal entry here that says it's him, but if he doesn't remember that's him then I guess I still make the same request of the felony as well.

Id., Vol. 3 at 2-4. The state trial court, the attorneys for both sides, and Hooks proceeded to discuss the challenged prior convictions and to review the related journal entries submitted by the prosecutor. After reviewing the related journal entries, Hooks conceded the existence of all but two of the prior convictions listed in the PSR. Consequently, the state trial court agreed with the PSR that Hook's "criminal history . . . [wa]s A."[1] Id. at 14.

Following this determination by the state trial court, Hooks' trial counsel addressed the state trial court regarding the matter of the plea agreement and stated, in pertinent part:

I don't think anybody knew he [Hooks] was a criminal history score of A at the time the plea was entered. * * * His goal was to get that cocaine [charge] to run concurrent with 60 months [for the aggravated battery charge], roughly, that was a reason to plead.

Today he comes before the Court and I think the Court said he was trying to be honest with the Court and did. He saw things he remembered. I talked to him just the other day and he didn't remember these things, thought he didn't have them, thought the burglary was a misdemeanor,

---

[1] The state trial court also addressed Hooks and stated: "I have to be honest with you, your memory is a little faulty as to these things. You verbally indicated you did not remember, and then when shown most of these documents, you said, oh, yeah, after all that is me. And so unfortunately, I can't really rely upon your memory." State ROA, Vol. 3 at 10.

thought the criminal threat had been misdemeanor, doesn't remember his batteries. So, anyway, certainly in his mind what he was pleading to, I can't say it was in [the prosecutor's] mind, but I think the State did not realize this kind of sentence we were looking at as well.

Id. at 15-16.

I think this thing [the plea] goes down as the silliest, the dumbest plea a defendant has ever done in light of what his criminal history score would be because there is no reason in the world why anybody would ever plead. Well, I'm sorry, I guess there are cases that might be appropriate, but to simply get a ten month sentence running concurrent to 154 [months] is not the deal of a lifetime. With the facts of the case, that's not the kind of deal that normally would be given. So that's all.

Id. at 26. Ultimately, Hooks' trial counsel asked the state trial court to depart downward from the guideline range and "consider a sentence of 59 months which would be the high number of criminal history score F." Id. at 17.

The state trial court then proceeded to sentence Hooks. In doing so, the court first addressed Hooks' decision to enter into the plea agreement:

But the Court – and it's why I questioned you specifically at your plea. I did agree and felt it was unusual for you to make a plea bargain and the nature of the plea bargain that you gave at the time, I felt was highly unusual. We had gone through virtually the entire State's case and you basically decided to roll over. I'm not entirely sure why you did that. I had my suspicions that part of this, my concern is, part of this had to do with the strength of the case. Your decisions about whether you were going to take a plea bargain or roll over was all about you trying to get the least amount of punishment that you could get. And you were kind of betting on the odds. And as the odds changed, your willingness to accept a certain deal tended to change along with that. And so honestly, I don't take a lot of mitigation by the fact you entered in this plea. This doesn't – your entering into this plea didn't really save the State any effort. This plea I think was – quite frankly, appears to me to be a last ditch effort on your part to try to mitigate your punishment to the maximum extent possible. It was kind of a roll of the dice on your part, and that's why I questioned you so specifically

6

about it. And you reaffirmed me at the time I took your plea this is what you wanted to do. I remember telling you specifically it was very possible that the jury could come back and find you not guilty, and given the evidence at that time, I thought that was a possibility. But you chose to go the way that you did.

Id. at 27-28. The court then noted "there [wa]s nothing in th[e] record that g[ave] it a hook to cling on to say there [wa]s some mitigating factor" that would justify Hooks' requested departure. Id. at 28. Indeed, the court noted that, in light of Hooks' violent criminal record, there was no "substantial or compelling reason to depart from" the guideline range. Id. at 29. Nevertheless, the court concluded it would afford Hooks leniency in two regards. First, the court chose "to impose the mitigated sentence" of 154 months for the aggravated battery conviction, thereby giving Hooks "a break of some 20 months" in comparison to the upper end of the guideline range. Id. Second, the court chose to likewise impose "the mitigated sentence" of 10 months for the possession of cocaine conviction and to run that sentence concurrently with the sentence imposed for the aggravated battery conviction. Id. Together, the court noted, these determinations effectively provided Hooks with "a break of 30 months." Id. at 30.

On May 17, 2006, Hooks filed a pro se motion to withdraw his plea and/or to correct an illegal sentence, alleging, in pertinent part, that during the trial proceedings the prosecutor "made an offer to [him] to enter a plea of no contest in exchange for an imposition of a term not to exceed 47 . . . months Recomended [sic] Imprisonment." Id., Vol. 1 at 64. The district court summarily denied Hooks' motion in a written order issued on June 15, 2006. Id. at 76.

7

*Hooks' direct appeal*

Hooks appealed his sentences to the Kansas Court of Appeals (KCA).  On April 27, 2007, the KCA issued an unpublished memorandum opinion "affirm[ing] the sentences imposed by the sentencing court based upon Hooks' criminal history."  State v. Hooks, No. 96,740 at 2 (Kan. Ct. App. Apr. 27, 2007).  The Kansas Supreme Court denied review on June 25, 2007.

*Hooks' motion to withdraw his plea*

On January 10, 2007, while his direct appeal was still pending before the KCA, Hooks filed with the state trial court a second pro se motion to withdraw his plea.  Id. at 79.  In that motion, Hooks alleged that his trial counsel was ineffective for advising Hooks to accept the plea "under the false assumption that his sentence would be computed with no criminal history . . . ."  Id. (all capitals in original).  Hooks asserted "that had he known he had three prior misdemeanors which would have enhanced his sentence as a matter of law, he would not have plead . . . and [would instead have] insisted on pursuing trial."  Id. at 80.  On February 2, 2007, the state trial court denied Hooks' motion.  Id. at 90.  Hooks appealed that denial to the KCA.

On August 22, 2008, the KCA issued an unpublished memorandum opinion affirming the state trial court's denial of Hooks' motion to withdraw his plea.  State v. Hooks, No. 98,596 at 7 (Kan. Ct. App. Aug. 22, 2008) (Hooks II).  The Kansas Supreme Court denied review on January 22, 2009.

8

*The federal habeas proceedings*

On April 27, 2009, Hooks filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting three grounds for relief. On November 17, 2009, the district court, after obtaining an answer and return from respondents, issued a thirty-one page memorandum and order denying Hooks' petition. Judgment was entered in the case that same day.

Hooks filed a notice of appeal on December 8, 2009. On January 27, 2010, the district court issued an order denying Hooks a COA. Hooks has since renewed his request for COA with this court.

## II

Issuance of a COA is jurisdictional. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In other words, a state prisoner may appeal from the denial of federal habeas relief under 28 U.S.C. § 2254 only if the district court or this court first issues a COA. 28 U.S.C. § 2253(c)(1)(A). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make that showing, a prisoner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

Hooks seeks a COA with respect to each of the three claims originally asserted in

9

his federal habeas petition. For the reasons that follow, we conclude Hooks has failed to make the requisite showing with respect to any of those claims.

*Apprendi* claim

In the first claim asserted in his federal habeas petition, Hooks alleged that the state trial court violated Apprendi v. New Jersey, 530 U.S. 466 (2000), by enhancing his sentences on the basis of his criminal history, since that history was neither admitted by him nor found by a jury beyond a reasonable doubt. In connection with that claim, Hooks further alleged that the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224 (1998), which effectively permits a sentence enhancement based on a defendant's criminal history without a jury finding or an admission by the defendant regarding that history, was wrongly decided.

Hooks first raised his Apprendi claim on direct appeal. The KCA rejected the claim on the merits, concluding it was bound by the Kansas Supreme Court's decision in State v. Ivory, 41 P.3d 781 (2002). In Ivory, the Kansas Supreme Court held that, under Apprendi and Almendarez-Torres, a "prior conviction need not be presented in the indictment and proven to a jury in order to be used by [a] court to increase the sentence imposed." 41 P.3d at 782.

The district court in this case in turn concluded that the KCA's rejection of the Apprendi claim was "neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent," and indeed "was legally consistent with Apprendi, Blakely[ v. Washington, 542 U.S. 296 (2004)], and Almendarez-Torres." ROA, Vol. 1 at

10

97.

We conclude that reasonable jurists could not debate whether the district court should have resolved the Apprendi claim in a different manner. As we have repeatedly noted, "[a]lthough the [Supreme] Court may overrule Almendarez-Torres at some point in the future, it has not done so, we will not presume to do so for the Court, and we are bound by existing precedent to hold that the Almendarez-Torres exception to the rule announced in Apprendi . . . remains good law." United States v. Moore, 401 F.3d 1220, 1224 (10th Cir. 2005). Consequently, Hooks is not entitled to a COA on this claim.

*Ineffective assistance claim*

In the second claim asserted in his federal habeas petition, Hooks alleged that his trial counsel was ineffective for failing to properly advise him, at the time he entered into the plea agreement with the prosecution, that his criminal history would significantly raise the recommended guideline sentencing range for the two crimes to which he pled no contest.

Hooks first raised this claim in his postconviction motion to withdraw his plea. The KCA, in affirming the state trial court's denial of that motion, concluded that "Hooks fail[ed] to show [his trial counsel] rendered ineffective assistance . . . ." Hooks II at 8. In reaching this conclusion, the KCA noted "there [wa]s substantial evidence Hooks entered his plea with knowledge and awareness of the potential consequences," and that, consequently, "it [wa]s unlikely that Hooks would have insisted on going to trial had he known his history score would expose him to 154 months in prison when he was already

11

willing to accept a plea that exposed him to 172 months." Id. In turn, the KCA

concluded, "Hooks . . . failed to show a reasonable likelihood that he was prejudiced" by

his trial counsel's allegedly deficient pre-plea advice. Id.

The district court in this case concluded that the KCA's decision was neither

contrary to, nor an unreasonable application of, the Supreme Court's decisions in

Strickland v. Washington, 466 U.S. 668 (1984) (outlining two-prong test for evaluating

claims of ineffective assistance of counsel), and Hill v. Lockhart, 474 U.S. 52, 57-58

(1985) (applying Strickland test to challenge to guilty plea based on ineffective assistance

of counsel). With respect to the deficient performance prong of the Strickland test, the

district court noted that "the record . . . clearly indicate[d] . . . Hooks either failed to

recognize or simply did not recall his own criminal history," and indeed "denied its

existence to his attorney as well, up until it was proven at the [sentencing] hearing on his

objections." ROA, Vol. 1 at 107. The district court thus determined that "Hooks misled

his attorney regarding his criminal history, or at least failed to give [his attorney] any

reason to believe [he] had a significant criminal history." Id. at 108. The district court

also noted that "[n]either the written plea agreement nor the transcript of the plea

proceeding indicate[d] [Hooks] was promised a sentence of 52 months or less," as he

alleged in his federal habeas petition.[2] Id. at 109. Further, the district court determined

that Hooks "was informed by his counsel and in the plea agreement that his sentence

_____

[2] We note, as did the district court, that this allegation differed from the one asserted by Hooks in his initial pro se motion to withdraw his plea. In that motion, Hooks alleged that the prosecution promised him a sentence of 47 months or less.

would be determined based upon his criminal history score and his offense severity level," and Hooks unreasonably believed "that his criminal history either was not significant or would not be used." Id. at 110. Lastly, the district court noted "that the trial court advised . . . Hooks prior to accepting his plea that he could be sentenced to a term of incarceration ranging from 38 to 172 months on the battery charge alone," and Hooks denied, in response to questioning by the trial court, having been promised anything to induce his plea. Id. at 111-12. Consequently, the district court "conclude[d] that . . . Hooks ha[d] not satisfied the performance prong of Strickland, and that the KCA's decision to that effect was not objectively unreasonable." Id. at 113.

As for the prejudice prong of the Strickland test, the district court noted the KCA had concluded that Hooks failed to show a reasonable likelihood that he was prejudiced by his trial counsel's advice, and that "[t]his holding was based on their finding, which [wa]s supported by the record, that 'at sentencing, Hooks acknowledged if it takes me going through prison for 166 or 77 months, you know, if that's what I have to do I guess I have to do that.'" Id. at 114 (quoting Hooks II at 7). The district court also noted, after reviewing the state court record, that Hooks' trial counsel stated during the plea hearing that the prosecution's evidence at trial "had some influence on [Hooks'] decision" to plead, and that, in particular, Hooks was concerned the prosecution could convict him of the aggravated battery charge based on evidence that he aided and abetted the crime. Id. In sum, the district court concluded that "Hooks' claim that he would have insisted on completing the trial but for counsel's erroneous advice [wa]s contravened by the record."

13

Id. at 115. Accordingly, the district court "conclude[d] the KCA decision that . . . Hooks failed to show prejudice from the alleged ineffective assistance of counsel was not objectively unreasonable." Id.

After reviewing Hooks' application for COA and his proposed opening appellate brief, we find nothing therein to persuade us that reasonable jurists could debate whether the district court should have resolved the ineffective assistance claim in a different manner, or that the claim is adequate to deserve encouragement to proceed further. Accordingly, we conclude Hooks has failed to establish his entitlement to a COA on the claim.

*Due process claim*

In the third and final claim asserted in his federal habeas petition, Hooks alleged that his due process rights were violated when the state trial court failed to appoint counsel and hold an evidentiary hearing in connection with his postconviction motion to withdraw his plea. The KCA addressed and rejected this claim on the merits in affirming the state trial court's denial of Hooks' motion to withdraw his plea. In doing so, the KCA concluded that the records in Hooks' case conclusively established he was not entitled to relief, and that, consequently, there were no substantial issues of fact or law that necessitated a hearing. In turn, the district court in this case concluded that Hooks was not entitled to federal habeas relief on the basis of the claim under 28 U.S.C. § 2254(d)(1) because the KCA's decision was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court. Indeed, the district

14

court noted that Hooks had failed to identify any "Supreme Court precedent," and the district court itself found none, "that clearly established his right to an evidentiary hearing or counsel in state post-conviction proceedings." ROA, Vol. 1 at 94.

In his application for COA, Hooks argues the merits of his claim, but again fails to identify a single relevant Supreme Court case that would establish the due process right supposedly violated by the state trial court. Consequently, we conclude that Hooks has failed to make a substantial showing of the denial of a constitutional right, as required under 28 U.S.C. § 2253(c)(2) for the issuance of a COA.

Hooks' request for a COA is DENIED and the matter is dismissed.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

15